UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

TIMOTHY WAYNE HOLLINGSWORTH,    )
   )
     Plaintiff,    )      No. 2:15-CV-36-WOB-REW
   )
v.    )
   )      RECOMMENDED DISPOSITION[1]
JAMES A. DALEY, Jailer, et al.,    )
   )
     Defendants.    )

\*\*\* \*\*\* \*\*\* \*\*\*

The Court confronts the following motions and filings in this case, which centers on alleged jail mistreatment of detainee Plaintiff:

(1)    *Pro se*[2] Plaintiff Timothy Wayne Hollingsworth filed a document titled "Dispositive Motion." DE #76. This document is not listed as a pending motion on the docket. Defendants James A. Daley, Renay Bunch, Joan Warfield, and Campbell County Detention Center (CCDC) responded. DE #83. Hollingsworth appears to have replied in support of this "motion." DE #86 (Reply, labeled "Plaintiff's Rebuttal to the Defendants [sic] Response to Plaintiff's Dispositive Motion").

(2)    *Pro se* Plaintiff filed a second document titled "Dispositive Motion." DE #78. Daley, Bunch, Warfield, and CCDC responded. DE #85. Defendant Krista

---

[1] The Court issues this Recommended Disposition pursuant to the District Judge's referral. DE #17 (Order).

[2] The Court evaluates a complaint and filings by a *pro se* plaintiff under a relatively lenient standard. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

Slayback responded. DE #90. Hollingsworth appears to have replied in support of this motion. DE #87 (Reply, labeled "Response to Defedants [sic] Second Response to Plaintiff's Dispositive Motion & Summary Judgment"). [Perhaps, though, DE ##86 or 93 is Hollingsworth's reply in support of this motion.]

(3)     Slayback moved for summary judgment. DE #79 (Motion). It does not appear any further briefing occurred regarding this motion.[3] [The Clerk docketed DE #87 as a response. The Court has considered that filing in full as to the issues to which it pertains.]

(4)     Daley, Bunch, Warfield, and CCDC moved for summary judgment. DE #80 (Motion). It does not appear any further briefing occurred regarding this motion.

(5)     *Pro se* Plaintiff filed a *third* document titled "Cross-Motion for Summary Judgment." DE #82. Daley, Bunch, Warfield, and CCDC responded. DE #88. Slayback responded. DE #92. Hollingsworth appears to have replied in support of this motion. DE #93 (Reply, labeled "Response to Defendant, Krista Slayback's Response to Plaintiff's Second Dispositive Motion"). He later filed a clear additional reply in support of this motion. DE #94 (Reply, labeled a "motion in support of his cross-motion for summary judgment").

The motions are either fully briefed, or the time for briefing has passed. Accordingly, all

---

[3] As to any party and regarding any motion, failure to respond is not itself grounds for the Court to grant summary judgment; summary judgment by default is improper. *See Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (*per curiam*); *see also Green v. United States*, No. 11-59-HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013). Upon consideration of "the motion and supporting materials," the Court can grant summary judgment if otherwise proper. Fed. R. Civ. P. 56(e)(3). A failure to respond is consequential, though, if the precipitating motion has merit under the summary judgment rubric. Regardless, the Court has considered all filings, irrespective of the attempted organizational efforts above, during the process of deciding the various dispositive motions.

motions stand ripe for review.[4] The Court has carefully read and taken into account the entire record to ensure proper process for both sides.

The Court **RECOMMENDS** that the District Court **GRANT** DE ##79 and 80, **DENY** DE ##76, 78, and 82, and **DISMISS** the case. There is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. Hollingsworth adequately supports none of his varied claims, under any of the applicable standards, and judgment for the defense is entirely proper.

## I.    BACKGROUND

In early 2015, Hollingsworth, an incarcerated person, filed a Complaint (later amended) pursuant to 42 U.S.C. § 1983. DE ##2 (Complaint); 27 (Document containing added claims or remedies). The suit stems from alleged events during and conditions of Plaintiff's custodial term at Campbell County Detention Center. Hollingsworth makes *numerous* claims or statements throughout the complaints. The core, however, is the following:

> On 1-6-15 at 8: AM Khrista Slayback, neglected to do her job by denieing me medical treatment. I was pulled out of cell 205 for sick call) I put in: While Nurse Slayback was taking my vital signs, she and I had a small disagreement in regards to some medication of mind that was stoped [apparently, Zoloft]. She told me that I wasn't getting it back. I said to her that's fine i'll just file a complaint. That's when the appointment became combative on her part she started shouting and ask me if I knew where I was at. That's when she told Officer Bunch, to take me back

---

[4] A court applies the same standard of review to cross-motions for summary judgment as when only one party files. *McKim v. New Market Techs., Inc.*, 370 F. App'x 600, 603 (6th. Cir. 2010). The Court evaluates each motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration. *Beal ex rel. Putnam v. Walgreen Co.*, 408 F. App'x 898, 902 (6th Cir. 2010). Summary judgment is not necessarily appropriate simply because the parties file cross-motions for summary judgment. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001) (footnote omitted). Indeed, "'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Id.* (quoting 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2720 (3d ed. 1998)).

to my cell and not treating me. That's when Nurse Khrista Slayback and Officer
Rene Bunch made up some Ridiculous story I threatened them. That's when they
made false and erroneous statements against me – and – had me put isolation for 4
day. I had no mat for most of the time I was in there. I was retaliated against for
filing a complaint / grievance. That is against cpp policy with the Department of
Corrections. This was brought to James A. Daley the Jailer and he neglect to do
any thing. I wrote him a hand letter (Twice) Sgt. Dietz answerd one of letters.
That makes no sense. Any kind of complaint… is dubious.

(1) Denieing me medical treatment
(2) Conspiracy between each other.
(3) Disciplinary action for filing Grievance / complaint.

DE #2, at 2 (all as in original). Hollingsworth further asserted that "Takin my mat was cruel, and

the floor was cold." *Id.* at 4 (all as in original). As to Warfield, Hollingsworth says only that he

"talked to" Warfield "and explained the problem[.]" *Id.* at 6; *see also* DE #81 (Hollingsworth

Depo.), at 14 (Depo. p. 51) (characterizing Warfield as "a contributing factor in this mess").

While the Complaint is not entirely clear, it appears Hollingsworth intended to make the claims

against all defendants in "their individual and official capacit[ies.]" DE #2, at 8; *see also* DE

#27, at 1 ("Plaintiff still wants to sue in both capacit[ies.]").[5] Plaintiff attached certain grievance

paperwork. DE #2-1, at 1-5. In the Court-permitted amendment, Hollingsworth asserted "Gross-

negligence" against Daley, Bunch, Warfield, and CCDC "for failing to intervene and force Krista

Slayback, and the medical department to provide the plaintiff, with medical Treatment and the

medications the plaintiff needed." DE #27, at 1. Hollingsworth also amended the complaint to

---

[5] State officials sued in their official capacities are not "persons" under § 1983. *Will v. Mich.
Dep't of State Police*, 109 S. Ct. 2304, 2312 (1989); *see also Kentucky v. Graham*, 105 S. Ct.
3099, 3105-06 (1985). "Because the real party in interest in an official-capacity suit is the
governmental entity and not the named official, the entity's policy or custom must have played a
part in the violation of federal law." *Hafer v. Melo*, 112 S. Ct. 358, 361-62 (1991) (internal
quotation marks omitted); *see also infra* Claim(s) Against CCDC Section. The Sixth Circuit has
also extended *Monell*'s general "policy or custom" requirement to private medical providers. *See
Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996). "A private corporation that
performs the traditional state function of operating a prison acts under color of state law for
purposes of § 1983." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

4

seek a jury determination of damages. *Id.*[6]

Daley, Bunch, Warfield, CCDC, and Slayback moved for summary judgment. DE ##79 and 80. Hollingsworth filed three separate dispositive motions. DE ##76, 78, and 82. The Court construes each referenced filing by Plaintiff to be a motion for summary judgment (indeed, the final one is so labeled). The parties engaged in a variety of briefing. The Court has considered all tendered documents and the full record and recommends judgment for the defense.

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that

---

[6] The Court notes that most of the factual statements in Hollingsworth's briefs and filings are not verified. The Court sees verification only on DE ##2, 58, and 94.

there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). The Rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552.

If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (citation omitted) (Brennan, J., dissenting); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it") (citation and internal quotation marks omitted). "If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting) (emphasis in original).

A fact is "material" if the underlying substantive law identifies that fact, or the element it concerns, as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

6

summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*
A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury
to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356
("Where the record taken as a whole could not lead a rational trier of fact to find for the non-
moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be
suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-
45 (6th Cir. 2006).

Substantively, in response to a well-supported defense motion in the context of a § 1983
deliberate indifference claim, a plaintiff "'must demonstrate a genuine issue of material fact as to
the following two elements: (1) the deprivation of a right secured by the Constitution or laws of
the United States and (2) that the deprivation was caused by a person acting under color of state
law.'" *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (quoting *Miller v.
Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005)).

## III.   ANALYSIS

Hollingsworth asserts, under a liberal construction of his complaint and the amendment,
that Daley, Bunch, Warfield, CCDC, and Slayback acted with deliberate indifference under 42
U.S.C. § 1983[7] when (1) Daley neglected to intervene in his medical treatment, did not respond
to letter(s), and was grossly negligent; (2) Bunch took him back to his cell, made false

---

[7] Section 1983 provides a federal cause of action against state officials for the deprivation of
federal constitutional rights under color of state law. The Eighth Amendment prohibits cruel and
unusual punishments and is applicable to the states. *Robinson v. California*, 82 S. Ct. 1417, 1420
(1962). As relevant here, the Eighth Amendment obligates the states to "provide humane
conditions of confinement[,]" including "ensur[ing] that inmates receive adequate food, clothing,
shelter, and medical care[.]" *Farmer v. Brennan*, 114 S. Ct. 1970, 1976 (1994). The Amendment
also obligates the states "to provide medical care for those whom it is punishing by
incarceration." *Estelle v. Gamble*, 97 S. Ct. 285, 290 (1976); *see also infra* note 8. Hollingsworth
specifically invokes the Eighth Amendment. DE #2, at 4.

statements, retaliated, and was grossly negligent; (3) Warfield heard a grievance and was grossly

negligent; (4) CCDC was grossly negligent; and (5) Slayback denied him medical treatment,

retaliated, and made false statements.

The Sixth Circuit has succinctly stated the contours of the legal framework for Eighth

Amendment conditions of confinement claims: [8]

> An Eighth Amendment conditions of confinement claim also contains both an
> objective and a subjective component. . . . The objective component requires the
> plaintiff to demonstrate that he has been subjected to specific deprivations that are
> so serious that they deny him the minimal civilized measure of life's necessities. .
> . . The subjective component requires the plaintiff to demonstrate that the prison
> officials acted wantonly, with deliberate indifference to the plaintiff's serious
> needs.

*Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (internal quotation marks and

citations removed); *see also Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Further,

"[p]rison officials violate an inmate's Eighth and Fourteenth Amendment right to adequate

medical treatment when: (1) 'the deprivation alleged [is], objectively, sufficiently serious' such

that the inmate 'is incarcerated under conditions posing a substantial risk of serious harm'; and

---

[8] Defendants assert at various points (including, *e.g.*, in DE #83) that Hollingsworth was a pretrial detainee, but Hollingsworth marked "convicted" on his Complaint and explicitly wrote "No" next to "pretrial detainee." DE #2, at 1; *see also* DE #86, at 3 ("The plaintiff wasn't always a pretrial detainee[.]"). To the extent the difference may matter, *cf. Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), it does not change the outcome here. *Cf. Whitley v. Albers*, 106 S. Ct. 1078, 1088 (1986) ("[T]he Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishments Clause."). "The Fourteenth Amendment's Due Process Clause grants pretrial detainees a right to adequate medical treatment—a right analogous to the Eighth Amendment rights of prisoners." *Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005). "Thus, under the Fourteenth Amendment, the state has a duty to provide pre-trial detainees with adequate medical care." *Id.* at 798. The detainee, however, must assert a "particularized right to medical care." *Id.* (internal quotation marks removed). Further, the "Fifth Amendment prohibits the punishment of pretrial detainees." *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001). A successful showing requires proving, under the standard, the intent of the official. *Id.* at 686-87; *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (applying the familiar objective and subjective standards).

(2) the prison official subjectively demonstrates 'deliberate indifference to inmate health or safety.'" *Grabow*, 580 F. App'x at 307 (quoting *Farmer*, 114 S. Ct. at 1977).

Per the cases, deliberate indifference, in turn, has subjective and objective components. *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006).[9] Plaintiff must show both that the defendants acted with a sufficiently culpable state of mind and that the alleged wrongdoing was sufficiently objectively harmful to establish a constitutional violation. *Id.* at 423-24.

"In considering the subjective component, [the Sixth C]ircuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Perez*, 466 F.3d at 424; *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (setting out test). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 117 S. Ct. 1382, 1391 (1997)); *see also Farmer*, 114 S. Ct. at 1980 (adopting "subjective recklessness" as the test for deliberate indifference); *Wilson v. Seiter*, 111 S. Ct. 2321, 2324 (1991) (The Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." (internal quotation marks and citations omitted)).

"[T]he subjective intentions of prison authorities must be demonstrated by objective

---

[9] Case law does not consistently use the same terminology, but the objective component of deliberate indifference substantially dovetails with the sufficiently serious deprivation inquiry. *See, e.g.*, *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Daniels v. Mahone*, No. 1:14-CV-2753, 2015 WL 3619529, at *2-*3 (N.D. Ohio June 8, 2015).

manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). However, "courts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious[,]" *Warren*, 576 F. App'x at 553 (internal quotation marks omitted) (quoting *Hope v. Pelzer*, 122 S. Ct. 2508, 2514 (2002)), or in other "usual ways, including inference from circumstantial evidence." *Id.* (quoting *Farmer*, 114 S. Ct. at 1981).

On a medical claim, "[t]he objective component of the test requires the existence of a sufficiently serious medical need[, which] is predicated upon the inmate demonstrating that he or she is incarcerated under conditions imposing a substantial risk of serious harm." *Miller*, 408 F.3d at 812 (internal quotation marks and citations removed).[10] A medical condition is sufficiently serious when a doctor has diagnosed a need for treatment or when the need for medical care would be obvious to a lay person. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotation marks and citation omitted)). "[T]he Eighth Amendment prohibits mistreatment only if it is tantamount to punishment, and thus courts have imposed liability upon prison officials only where they are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466

---

[10] Some courts appear to look at the seriousness of the medical need in isolation. *See, e.g.*, *Rouster*, 749 F.3d at 446 (stating, "A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was sufficiently serious" and examining Plaintiff's medical conditions, concluding that he "had an objectively serious need for medical treatment").

10

F.3d at 423 (internal quotation marks omitted);[11] *see also Wilson*, 111 S. Ct. at 2324 (The Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." (internal quotation marks and citations omitted)); *Hudson v. McMillian*, 112 S. Ct. 995, 1000 (1992) ("[S]ociety does not expect that prisoners will have unqualified access to health care[.]").

*The Slayback—Bunch Interaction*

The impetus for Hollingsworth's complaint was the January 6, 2015, interaction with Slayback and Bunch. Particularly, on that day, Hollingsworth alleges that he reported for sick call, at which time he and Slayback, a nurse, "had a small disagre[e]ment in regards to some medication of mine that was stop[p]ed." DE #2, at 2; *see also* DE #82-1, at 14 (characterizing the incident as "a small diffe[rence] of opinion about my zoloff [sic] pills"). He alleges that the "appointment became combative on her part" and "she started shouting[.]" DE #2, at 2. Slayback then instructed Bunch "to take [Hollingsworth] back to [his] cell[.]" *Id.*

The medication at issue was Zoloft. The medical records indicate that Hollingsworth had been "hoarding" the Zoloft, and when Slayback told him that "hoarding is not acceptable," he "began to yell & threaten harm & lawsuit on medical." DE #78-5, at 2. Hollingsworth readily

---

[11] For the subjective component of deliberate indifference, the standard of "deliberateness tantamount to an intent to punish" is "not good law." *Warren*, 576 F. App'x at 559. Instead, as set out above, "deliberate indifference . . . is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 114 S. Ct. at 1978. Again, though, case law sometimes blends the standards. *See, e.g.*, *Smit v. Meyer*, 461 F. App'x 503, 504-05 (6th Cir. 2012) ("In order to establish an Eighth Amendment violation, Smit was required to demonstrate that Meyer was *deliberately indifferent to his serious medical needs, amounting to an unnecessary and wanton infliction of pain*. To meet this burden, Smit was required to show that Meyer actually knew of his alleged serious medical need." (citations omitted; emphasis added)).

11

admitted skipping some Zoloft doses. DE #81, at 24 (Depo. p. 89). He also admitted that he "was probably upset a little." *Id.* at 30 (Depo. p. 110). As part of the grievance process, the CCDC "looked into" the January 6 incident and "found that [Hollingsworth was] at fault for threatening." DE #78-7, at 2; *see also* DE #79-19 (Progress notes for 1-6-15 stating, "I/M [presumably, inmate] then began to yell & threaten harm & lawsuit on medical."). Hollingsworth, however, maintains that Slayback initiated the combativeness.

A source, at some point after Hollingsworth arrived at CCDC, prescribed him Zoloft (which he had previously, outside of jail, been prescribed). DE #81 (Hollingsworth Depo.), at 8 (Depo. pp. 23, 25); *see also, e.g.*, DE ##79-10, at 7 (Hollingsworth sick call slip of 4-4-14 asking for Zoloft and Lexapro); 79-9, at 3 (noting a physician's order of 4-28-14 for Zoloft 50 mg); *id.* at 1 (noting prior counseling or outpatient treatment for depression); 79-10, at 23 (progress notes for 4-28-14 stating "New order received to restart Zoloft 50 mg"); 79-10, at 26 ("What medications have you taken in the past? Zoloft."). However, prior to this stint of incarceration, he reported taking no "medications on a daily basis" (except possibly staph medicine). DE #81, at 21, 22 (Depo. pp. 74, 78); *see also* DE #79-8, at 1. On May 16, 2014, the prison changed the Zoloft from a morning to night dose, at Hollingsworth's request. DE #79-10, at 13; *see also* DE #79-10, at 23 (5-13-14 report that "Zoloft is helping depression").

Plaintiff estimated that he took Zoloft for 5-6 months while at CCDC. DE #81, at 8 (Depo. p. 24). On August 21, 2014, medical increased Zoloft to 100 mg. DE #79-10, at 24. The medical department discontinued Zoloft before January 6, 2015 (apparently around December 3, 2014). *See* DE ##81, at 9 (Depo. p. 27); 79-12, at 2 (D/C [presumably, discontinue] Zoloft noted 12/3/14 by Dr. Kalfas); 79-16, at 7 ("12/3/14 1800 MD consulted on . . . hoarding Zoloft MD orders to discontinue Zoloft at this time."). The next day, December 4, 2014, Hollingsworth filed

a sick call slip complaining about the discontinuance, DE #79-19, at 1, which he followed with several more pointed complaints, *id.* at 2; *id.* at 3 ("You stupid idiots! Wheres my zoloff!! . . . I hope you come back reincarnated as Bill Cobsy. Your sick." (all as in original)); *id.* at 4 ("If you don't give my pills back 'zoloff' I'm making voodoo dolls of all the nurse . . . and stick them with a pin." (all as in original)).[12]

On January 6, Hollingsworth "wanted to see the nurse due to . . . problems with my back" and because of "a cough or some type of aggravation in my throat." DE #81, at 9 (Depo. p. 27). Despite the medical visit only nominally concerning back pain and a throat problem, "Krista Slayback and [Hollingsworth] got into a discussion about that Zoloft." *Id.* at 11 (Depo. p. 34). Hollingsworth's central claim, then, as far as the Court can tell, is that Slayback violated the Constitution by declining to give him a medicine that he was not currently prescribed. The basis of the denial of medical care claim, per Hollingsworth directly, is that he "went to the medical department and was refused medication[.]" *Id.* at 15 (Depo. p. 53).

*Prong One*—Hollingsworth makes no foundational showing of a serious medical need. Hollingsworth has presented no evidence that he had a sufficiently serious medical need for Zoloft on January 6, 2015, and regardless, he did in fact receive medical care on January 6 and on *numerous* earlier and later occasions. Zoloft was not even the subject of the medical visit on January 6; the visit was only to address back and throat problems (neither of which Hollingsworth establishes as qualifying). The 2004 Hollingsworth-related report (from 11 years

---

[12] Most of Hollingsworth's confusing and repetitive briefs focus on minor (perceived, largely) inconsistencies in proof or details of no relevance to the claim analysis. For instance, *whether* Hollingsworth ever hoarded pills is not in issue. In December 2014, the jail doctor discontinued Zoloft on the belief Hollingsworth was hoarding. The discontinuance is not a contested historical fact.

prior to the incident) is obviously not indicative of a serious medical need on January 6, 2015.[13] On the date of the fateful medical visit, medical staff apparently never told him that he needed Zoloft. Rather, Hollingsworth simply asserted that he needed it:

> Q:     Okay. So, you come in for your back and for a cough, right?
> A:     Yes. Yes.
> Q:     Okay. So then, what did you say about the Zoloft? I'm just trying to understand what—
> A:     I needed it back, you know. . . .

DE #81, at 11 (Depo. p. 37). Hollingsworth had no memory of Nurse Ray, subsequent to the January interaction, "saying that I need to be back on it [Zoloft.]" *Id.* at 26 (Depo. p. 97). Later, he admitted that "they [the medical department] cannot provide me with that medication. I have to go through the psychiatrist." *Id.* at 27 (Depo. pp. 99-100). Plaintiff clearly disclaimed that his complained-about denial concerned his back. *Id.* at 28 (Depo. p. 104). At bottom, Hollingsworth has not demonstrated a sufficiently serious medical need because the doctor, in fact, discontinued the Zoloft prescription before the Slayback confrontation. *See Harrison*, 539 F.3d at 518 ("A serious medical need is one that has been diagnosed by a physician as mandating treatment[.]"). Here, a physician has said precisely the opposite—that the medicine was no longer medically appropriate. Hollingsworth certainly has not shown that his need for Zoloft was "so obvious" that a lay person would "easily recognize" its necessity. *Id.* Finally, he placed no "verifying medical evidence in the record to establish [a] detrimental effect" of any Zoloft denial. *Napier*,

---

[13] This November 2004 report (from over a decade before this incident) stated under Medications: "None. The patient was on Zoloft 100 mg a day, but felt it was ineffective and it causes sexual side effects." DE #82-1, at 9. Despite Hollingsworth's handwritten exhibit alteration that "[t]he defendant knew I needed the Zoloft," the report indicates precisely the opposite—that he was no longer prescribed Zoloft and he had previously "felt it was ineffective." A report from over 10 years before the appointment at issue stating that Hollingsworth was *not* prescribed Zoloft and that he had previously felt it was ineffective would in no way indicate to the prison medical staff that Plaintiff needed the drug on January 6, 2015.

238 F.3d at 742; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897-98 (6th Cir. 2004).

*Prong Two*—Even if Hollingsworth jumped the serious need hurdle, he would stumble

fatally on the subjective component of deliberate indifference. There is utterly no evidence that

any defendant perceived facts to infer a substantial risk to Hollingsworth, in fact drew that

inference, and then disregarded the risk. Rather, they reasonably followed medical orders and

attempted to address Plaintiff's many medical complaints. *See, e.g.*, *Walker v. Eyke*, 417 F.

App'x 461, 464 (6th Cir. 2011) (finding "no evidence that indicates a deprivation of medical care

was due to Eyke's sufficiently culpable mind" when the doctor placed a prisoner with a prior

prescription for Zoloft in a suicide cell and rejecting reliance on Plaintiff's "own conclusory

accusations, which only arose after he was denied medication"). As in *Walker*, there is "no

evidence that [Slayback] deprived [Hollingsworth] of medication for any malicious reason." *Id.*

More fundamentally, Hollingsworth points to no injury resulting from the denial of Zoloft—he

only repeatedly expresses his anger at not receiving it.[14] To the extent he claims "mental

anguish," DE #2, at 8, he presents utterly no proof on the topic—medical, expert, or otherwise.

*See, e.g.*, *Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997); *Mendez-Matos v.*

---

[14] To the extent Hollingsworth intends his allegation of making false statements (concerning an alleged threat) to be a separate cause of action, it states no § 1983 claim. *See, e.g.*, *Daley v. United States*, No. EDCV 10-00425 SJO (SS), 2010 WL 2595966, at *2 (C.D. Cal. June 24, 2010) ("Plaintiff's claims regarding false statements made by Defendant Entzel and Defendant Academia do not state a claim under § 1983 and must be dismissed."); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[M]ere allegations of falsified evidence . . ., without more, are not enough to state a due process claim."); *Dockery v. Houston*, 229 F. App'x 428, 428 (8th Cir. 2007) (*per curiam*) ("Dockery cannot sue for allegedly false statements in a grievance response[.]"); *Israfil v. Parks*, No. 2:10-CV-132, 2010 WL 4642978, at *1 (S.D. Ohio Aug. 18, 2010) ("Plaintiff's allegation[] here of reliance upon false material statements . . . do[es] not, as a matter of law, state a claim under 42 U.S.C. § 1983." (internal quotation marks removed)); *Sango v. Huss*, 2014 WL 2616592, at *9 (W.D. Mich. June 12, 2014) ("Ault's allegedly misleading statements did not deprive Plaintiff of his right to due process, or any other constitutional right."). Indeed, Hollingsworth admitted that he "might have said a little something" to Bunch as the Officer escorted him back to his cell. DE #82-1, at 14.

*Municipality of Guaynabo*, 557 F.3d 36, 47 (1st Cir. 2009) (citing *Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994)); *Wesley v. Rigney*, No. 10-51-DLB-JGW, 2016 WL 853505, at *12-*13 (E.D. Ky. Mar. 3, 2016). Hollingsworth has identified no physical harm or other specific injury. In a § 1983 suit, "[d]amages for pain and suffering, mental anguish, and the like are available to the extent that actual injury has been proved." *Pembaur v. City of Cincinnati*, 882 F.2d 1101, 1104 (6th Cir. 1989). The record contains no evidence that would support a showing of cognizable emotional damage. *See Carey v. Piphus*, 98 S. Ct. 1042, 1052 (1978) ("[A]lthough mental and emotional distress . . . is compensable under § 1983," a plaintiff must "justify awarding [such] damages with[] proof that such injury actually was caused.").

The Court makes a few other observations. First, Hollingsworth attached various sick call slips, from 3-12-14, 4-4-14, 4-17-14, 4-26-14, 5-17-14, 8-11-14, 11-24-14, 12-4-14, 12-5-14, and 1-5-15, as well as a refusal of medical treatment form signed on 12-18-14. DE #78-5, at 1-13.[15] *Every one* of these papers indicates that Hollingsworth received medical attention responsive to his concern(s). Second, Slayback attached additional sick call slips indicating medical treatment. DE ##90-1 through 90-11. Slayback catalogued Hollingsworth's treatment instances, including an October 6, 2014, visit to a medical doctor. DE #82-1, at 16 (Grievance response, 10-7-14). Slayback also attached data forms from May 10 and 11, 2015, indicating Hollingsworth medical treatment post-January incident. DE #92-1, at 1-4. Third, Hollingsworth established—and the Court sees—no relevance to the urine dip result page that he tendered. DE #82-1, at 6. *By no means* does this document indicate that he was bleeding internally on January 6, 2015; it—on its face—has nothing to do with such a topic, and it is from May 2015 (4+ months after the

---

[15] These records are not authenticated, but the defensive presentation also includes them (and others). *See* DE ##79-10, at 3-21; 79-16, at 5; 79-17, at 1; 79-19, at 1-10; 79-20, at 1.

incident). All of this is to reiterate a point often made: "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also, e.g.*, *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (same).

Hollingsworth next makes a retaliation claim. To successfully demonstrate retaliation, Plaintiff "must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) that the adverse action was taken (at least in part) because of the protected conduct." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). Filing a non-frivolous grievance is protected conduct. *Id.*

Hollingsworth's sole stated basis for retaliation is the assertion that he "was locked up after [he] left the medical department[.]" DE #81, at 16 (Depo. p. 56); *see also id.* at 17 (Depo. p. 60) (Hollingsworth asserting "I was put in isolation because I asked—told Krista Slayback that I was going to file a complaint against her[.]"). The direct proof as to Slayback is sharply limited, but Bunch admitted that it was her "idea to put Plaintiff in segregation." DE #94-1, at 3 (Answer to Request 13). Bunch also admitted that Plaintiff's "mat was removed as part of punishment after the problem at the medical department." DE #76-1, at 9. There are certainly potential problems with the proof—such as, for example, the timing/sequence of the segregation vis-à-vis filing of any grievance, and that the placement in isolation happened hours after the medical episode. In this context, Hollingsworth probably meant the allegation to reference retaliation for *threatening to* file a grievance. However, viewing the evidence in the light most favorable to

Hollingsworth, the proof—especially given Bunch's admissions—fairly supports an inference that Bunch[16] put Hollingsworth (or somehow arranged for him to be put) in isolation due, at least in part, to his threat to file a grievance, which likely is protected conduct. In the light most favorable to Plaintiff, a jury could conclude that Bunch—who had the idea to put Hollingsworth in isolation and removed his mat as punishment for "the problem at the medical department"— took these actions to retaliate against Plaintiff for threatening to file a grievance or complaint, which was part of the conduct Hollingsworth alleges at medical.

Even so, the Court must dismiss the retaliation claim because Hollingsworth did not fully exhaust administrative remedies. The Prison Litigation Reform Act's "exhaustion requirement applies to all inmate suits about prison life[.]" *Porter v. Nussle*, 122 S. Ct. 983, 992 (2002); *see also* 42 U.S.C. § 1997e(a). Exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 126 S. Ct. 2378, 2385 (2006) (emphasis in original). "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 921 (2007).[17] The exhaustion "requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, *Brock v. Kenton County*, 93 Fed. Appx. 793, 798 (6th Cir. 2004); even when the state cannot grant the particular relief requested,

---

[16] The Court finds the retaliation proof as to Slayback insufficient to survive summary judgment on the merits. Hollingsworth in no way factually connects placement in isolation with any Slayback action and does not foundationally show that Slayback—a nurse employed by the private Southern Health Partners—had authority to order or effect placement in CCDC isolation.
[17] "When a prisoner's complaint contains a combination of exhausted and unexhausted claims, courts are to dismiss the unexhausted claims but retain and address the exhausted claims." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 500 (6th Cir. 2011). Any unexhausted claim dismissal is without prejudice. *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

*Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001); and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .' *Pack v. Martin*, 174 Fed. Appx. 256, 262 (6th Cir. 2006)." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). "[B]ecause the failure to exhaust is an affirmative defense on which defendants bear the burden of proof, it may 'serve as a basis for dismissal only if raised and proven by the defendants.' *Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. 2007)[.]" *McClain v. Mason Cnty., Ky.*, 618 F. App'x 262, 265 (6th Cir. 2015).

Here, Hollingsworth's submitted grievance form contains nothing about a complaint concerning retaliatory isolation placement. *See* DE #2-1, at 2. A second handwritten document titled "Grievance" also contains no information on this topic. *See id.* at 1. It was not until an undated letter "To Whom It May Concern" at the "Department of Correction" in Frankfort that Hollingsworth mentioned being "put in the hole for 4 days." *See id.* at 6. Bunch particularly raised exhaustion as a defense. DE #80, at 10-11. Because Hollingsworth did not even arguably raise the retaliatory isolation issue in the originating grievance, and because there is no evidence of any appeal of that grievance raising the alleged retaliatory isolation placement at higher levels within CCDC, the defense has shown that Hollingsworth did not properly "us[e] all steps that the [prison] holds out . . . so that the agency addresses the issues on the merits[.]" *Woodford*, 126 S. Ct. at 2385; *see also, e.g.*, *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Hollingsworth's failure to properly exhaust administrative remedies as to the retaliation claim against Bunch requires dismissal of the claim, although without prejudice.

Hollingsworth additionally makes cursory reference to an allegation that he briefly celled with another inmate in isolation. *See, e.g.*, DE ##94, at 3 ("The plaintiff was forced into a[n] isolation cell with another inmate, Dean Shepard, this cell had enough room for only one

19

inmate[.]"); 94-1 ("1 cell 1 bed-2 inmates"). Hollingsworth utterly fails to present any proof to support the claim, but, regardless, double celling does not violate the Constitution. *Rhodes v. Chapman*, 101 S. Ct. 2392, 2400-01 (1981); *Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003) ("[D]ouble-celling, by itself, does not violate the Eighth Amendment.").

Hollingsworth's complaint also references a civil conspiracy. DE #2, at 3. A conspiracy under § 1983 "is an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). "To prevail on a civil conspiracy claim, [Hollingsworth] must show that (1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [Hollingsworth] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [Hollingsworth]." *Id.* (internal quotation marks removed).

The conspiracy claim obviously fails. Hollingsworth offers no evidence to prove that any defendants had "a single plan" or that they shared a "conspiratorial objective to deprive" him of a constitutional right. At most, he offers "vague and conclusory" speculation. *Id.* at 603; *see, e.g.*, DE ##93 ("It's only obvious that defendant[s] Slayback & Bunch got together [and] made up a lie (conspiracy)[.]"); 82, at 3 (conjecturing that "while the plaintiff was at court," Bunch and Slayback "made their little deal"); 81, at 15-16 (Depo. pp. 53-55) ("[T]hey had to talk to each other. . . . [T]hey had to because I got put in the hole."); *id.* at 29 (Depo. p. 108) ("I didn't hear her, personally, say it[.]"); *id.* ("I mean, it's only obvious. Why—they had to communicate with each other."); *id.* (Depo. p. 109) ("I never heard them talking to each other[.]").

Hollingsworth particularly cites a log indicating the jail placed him in isolation on January 6, 2015, at 12:27 p.m. as proof of a conspiracy. *See* DE ##82, at 3; 82-1, at 13. To the contrary, the log itself proves nothing of the sort. The "assigning officer" was Desiree Nichols—

*not* Slayback or Bunch. The log itself in no way shows either Defendant's involvement, and the placement was *hours* after the medical incident. Indeed, Hollingsworth indicated that he left the jail for court between the time of the medical appointment and placement in isolation. DE #82, at 3. Hollingsworth himself said that Bunch "t[ook] me back to my cell," *i.e.*, *not* to isolation. DE #82-1, at 14; *see also* DE #81, at 12 (Depo. p. 41) ("So, were you taken back to your regular cell first? Yeah. 205. That was cell 205. Yes."). The officers involved in putting Hollingsworth in isolation are not defendants here. *Id.* at 13 (Depo. pp. 42-43, naming Mischell and a man nicknamed Florida).

As the Court stated above, Bunch admitted some involvement, but Hollingsworth presents nothing specifically tying Slayback to the isolation placement or permitting an inference of a joint plan or conspiratorial objective. Further, the Court has found no underlying constitutional violation; thus, there is no merit to a derivative conspiracy claim. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (upholding summary judgment grant on conspiracy claim where "appellants failed to prove that any of their constitutional rights were violated"). Hollingsworth has shown no entitlement to relief concerning the factually unsupported conspiracy claim, and the District Court should dismiss it. *Bazzi*, 658 F.3d at 602; *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987) (affirming grant of summary judgment when the plaintiff's conspiracy allegations lacked "requisite material facts and specificity"); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (same); *Robertson*, 753 F.3d at 622 (same).[18]

*Daley's Involvement*

Hollingsworth makes two claims against Daley, the Jailer: that he failed to respond to

---

[18] The Court, to give Hollingsworth, who is *pro se*, a full opportunity to present his claims and arguments, does not premise case or claim dismissal on any alleged motion untimeliness. *See* DE ##88, at 3; 92, at 4-5.

two letters (although one such letter generated a response from a different person) and that he was grossly negligent in failing to intervene and force Slayback and the medical department to provide him medical treatment and the needed medications. The Court will consider the gross negligence suggestion in a separate section below.

As a general matter, supervisory liability does not lie in § 1983 actions unless Plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). "Allegations of supervisory liability by themselves, moreover, will not do the trick. Instead of holding supervisors liable on a theory of vicarious liability, the supervisors must have actively engaged in unconstitutional behavior to be liable under § 1983." *Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014) (internal quotation marks removed). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 902 (6th Cir. 2003). Further, a "prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *Womack v. Conley*, 595 F. App'x 489, 495 (6th Cir. 2014) (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006)). "[O]fficials are personally liable for damages under [§ 1983] only for their own unconstitutional behavior." *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (internal quotation marks removed). A "§ 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.*

Hollingsworth does not allege Daley's personal involvement in any of the other Defendants' actions. Rather, Plaintiff's only allegation of direct (in)action by Daley is a failure to respond to two letters (although one prompted a response from a different person).

Hollingsworth offers utterly no specific detail of what the alleged letters conveyed, and he does not specifically identify in the record where or whether either letter appears. Perhaps DE #2-1, at 1 is one such letter (it says "To: James Daley" but it is also titled "<u>Grievance</u>").[19] The complaint suggests that the communication concerned the alleged policy breach—*not* any complaint over medical treatment. DE #2, at 3.

Regardless, any Daley letter non-response would not constitute deliberate indifference to Hollingsworth's medical need. "[T]he mere failure to act [i]s not a sufficient basis for liability." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Indeed, here, "[t]he complaint bespeaks nothing more than a warden's reasonable reliance on the judgment of prison medical staff, which *negates* rather than supports liability." *Arocho v. Nafziger*, 367 F. App'x 942, 956 (10th Cir. 2010) (emphasis in original). "If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. . . . Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain th[e prison] division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (emphasis in original), *cited and quoted in Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (affirming judgment against two defendants when the "only allegation against [them] was that they failed to respond to letters Durmer sent to them explaining his predicament"). In *Durmer*, because "[n]either of these defendants . . . [wa]s a

---

[19] In an undated letter "to whom it may concern" attached to the Complaint, Hollingsworth stated that one letter "ask[ed Daley] to put in a[n] order to keep [Bunch] away from [him]." DE #2-1, at 6. This referenced letter may well be DE #2-1, at 1.

physician . . . neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Id.* So too here.

Harmonious case law from around the country supports this result. *E.g.*, *Ramsey v. Haney*, No. 5:15-117-DCR, 2016 WL 782394, at *4 (E.D. Ky. Feb. 29, 2016) (dismissing a § 1983 suit based on a warden's failure to respond to an inmate letter concerning medical treatment); *Conaway v. Godinez*, No. 15-3339, 2015 WL 9047569, at *4 (C.D. Ill. Dec. 16, 2015) ("Plaintiff cannot establish personal involvement and subject an official to liability under § 1983 based merely upon a letter writing campaign." (internal quotation marks and alteration removed)); *Cooke v. Morgan*, No. 11-073-LPS, 2011 WL 5523267, at *3 (D. Del. Nov. 14, 2011) ("Plaintiff cannot maintain a constitutional claim merely because Warden Morgan did not respond to his letter."); *Lampley v. Mitcheff*, No. 3:08-CV- 282 PS, 2010 WL 2346329, at *6 (N.D. Ind. June 8, 2010) ("Therefore, simply receiving prisoner correspondence—a tort claim notice, for example—about a medical problem does not make a non-medical prison official liable for the failure to provide medical care under the Eighth Amendment. . . . The fact that Finnan and Brown, who have no medical expertise, did not directly intervene in Lampley's care and tell 'medical staff how to do its job' cannot be considered deliberate indifference.") (citing *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009)); *Junne v. Atl. City Med. Ctr.*, No. 07-5262 (RMB), 2008 WL 1901111, at *15 (D.N.J. Apr. 25, 2008); *Sartain v. Scribner*, No. 1:04-cv-05621-LJO-SMS PC, 2008 WL 1773870, at *4 (E.D. Cal. Apr. 16, 2008) ("[P]laintiff's allegation that . . . Warden Scribner did not help when he wrote letters to [him] about his need for Methadone does not rise to the level of deliberate indifference to a serious medical need."); *Chase v. Ward*, No. CIV A 98-4100, 2000 WL 572711, at *2 n.5 (E.D. Pa. May 10, 2000) ("A warden who is not a

medical professional is not deliberately indifferent merely for failing to respond directly to the medical complaints of an inmate who is being treated by professional staff on whose expertise the warden may rely.").[20]

Hollingsworth alleges no incident, involving any of his claims, that Daley specifically encouraged or in which he directly participated. "A mere failure to act will not suffice to establish supervisory liability." *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). Hollingsworth has not shown that Daley was aware of facts from which he could and did draw the inference that *his* conduct (*i.e.*, a nonresponse) posed a substantial risk of serious harm to Hollingsworth. Plaintiff remained under medical staff's care. Daley certainly was not deliberately indifferent by allowing professionally managed treatment to continue and any grievance process to play out. He would be well within his role as Jailer to permit Hollingsworth to seek redress via proper channels without interfering in the jail's medical operations or doctors'

_____

[20] Hollingsworth makes no allegation that Daley "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[d] with the treatment once prescribed." *Estelle*, 97 S. Ct. at 291 (footnote omitted). Quite the opposite—Hollingsworth received regular medical treatment during the times relevant to the Complaint, and Daley did *not* interfere. The Sixth Circuit has long instructed lower courts to be "generally reluctant to second guess medical judgments" where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment[.]" *Westlake*, 537 F.2d at 860 n.5. To the extent Hollingsworth asserts an "inferred deliberate indifference theory" by virtue of Daley's failure to respond to a letter, such an inference is proper only upon "strong proof of a pervasive pattern of indifference to the inmates' medical needs generally." *Hill v. Marshall*, 962 F.2d 1209, 1214 (6th Cir. 1992); *see also Sanderfer v. Nicholas*, 62 F.3d 151, 154 (6th Cir. 1995); *Banks v. Hiland*, No. 5:12-CV-197-TBR, 2014 WL 4365223, at *4 (W.D. Ky. Sept. 2, 2014) ("In this case, . . . there is not strong proof of a pervasive pattern of indifference to the inmates' medical needs generally. In fact, the opposite is true. There is significant evidence of a pattern of constant attention to Plaintiff's medical needs. Although Plaintiff may not have always received the medication he requested, there was not a deliberate indifference to his medical needs." (internal citations and quotation marks removed)). The Sixth Circuit is clear that isolated non-responses are not enough for liability—rather, Hollingsworth must allege a pervasive pattern of such behavior, which he has not done. *See Hill*, 962 F.2d at 1214. Hollingsworth, even after a lengthy period of discovery, does not approach the standard of *Hill*.

prescribing decisions. Daley, on these facts, did not recklessly disregard a substantial risk of serious harm to Hollingsworth when he did not respond to certain letter(s). *Smith*, 505 F. App'x at 532; *cf. Estate of Young v. Martin*, 70 F. App'x 256, 260 (6th Cir. 2003) (reversing denial of qualified immunity to warden when, analogous to here, "the only allegation of [the warden's] involvement in the prisoner's care was one phone call from the prisoner's relative raising concerns about the adequacy of the prisoner's health care").

*Warfield's Involvement*

As to Warfield, Hollingsworth says only that he "talked to" Warfield "and explained the problem[.]" *Id.* at 6; *see also* DE #81 (Hollingsworth Depo.), at 14 (Depo. p. 51) (characterizing Warfield as "a contributing factor in this mess"). He subsequently made a gross negligence allegation against Warfield, which the Court will consider below.

The Court makes quick work of this thin claim. Any perceived insufficient response to Hollingsworth's complaint to Warfield or grievance is insufficient to subject Warfield to § 1983 liability. *See, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (reversing denial of qualified immunity when the defendant's "only role[] in this action involve[d] the denial of administrative grievances"); *Reed-Bey v. Pramstaller*, 607 F. App'x 445, 451 (6th Cir. 2015) ("Reed–Bey argues that DuBuc should be liable for the delay in his medical treatment because she failed to resolve his complaints concerning his medical treatment . . . [but] the denial of administrative grievances . . . by prison officials does not subject [them] to liability under § 1983." (internal alteration and quotation marks removed)); *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) ("Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest."); *Martin v. Coval*, 229 F.3d 1152, 2000 WL 1234329, at *1 (6th Cir. Aug. 21, 2000) (table) ("To the extent that Martin asserted that Coval improperly processed the

26

grievances, the claim is without merit. . . . [A] state has no federal due process obligation to follow all of its grievance procedures[.]"). Hollingsworth's nebulous claim against Warfield plainly fails.

*Claim(s) Against CCDC*

Hollingsworth listed CCDC in the Complaint caption, *see* DE #2, at 1, but he makes no specific allegation against it in the body of the Complaint. Later, however, he included CCDC in the gross negligence assertion, and the Court will evaluate that claim below.

For thoroughness, however, to the extent any of Hollingsworth's statements can be interpreted to suggest a § 1983-based claim against CCDC, that statute "does not permit a municipal entity to incur liability under a theory of *respondeat superior*." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005). Rather, the entity "may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question." *Id.* Its "policy or custom must be the moving force of the constitutional violation in order to establish . . . liability[.]" *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *see also, e.g.*, *Sexton v. Kenton Cnty. Detention Ctr.*, 702 F. Supp. 2d 784, 790 (E.D. Ky. 2010) (applying these rules to Kenton County Detention Center).

Here, Hollingsworth presents no evidence to support such conclusions, and any such claim (though Hollingsworth plainly makes none) thus fails. He identifies no offending CCDC policy or custom and fails to put forward proof that an injury occurred because of such (or any) policy or custom. Because Hollingsworth makes no direct allegations against CCDC and does not show a direct causal link between a CCDC policy or custom and any alleged constitutional violation (or that it was the moving force behind the alleged violation), the Court recommends dismissal of the complaint against CCDC independently, on this ground. This applies equally to

27

any official-capacity claim. *Hafer*, 112 S. Ct. at 361-62.[21]

*Sleeping Mat / Bed Frame Issues*

The deprivation of a sleeping mat, as well as hard bed frames, is the subject of Hollingsworth's first "dispositive motion." DE #76. In the Complaint, Hollingsworth made a passing remark that "[t]akin[g] my mat was cruel, and the floor was cold." DE #2, at 4.[22]

As Defendants persuasively argue, assuming Hollingsworth's allegations are true and assuming that they are properly presented as § 1983-based theories, the claims do not state constitutional violations. "In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011); *Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) ("Grissom neither alleged nor presented any evidence that the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm."); *Jones v. Toombs*, 77 F.3d 482, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (table) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two week period."). It follows logically that use of steel bed frames, at least absent proof of resulting injury, does not violate the Constitution. *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); *Brooks v. Cnty. of Macomb*, No. 13-CV-15082, 2015 WL

---

[21] Hollingsworth also makes no effort to identify any relevant offending SHP policy or custom, as it may matter to any official-capacity suit against Slayback. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355-56 (6th Cir. 2006).
[22] Some Defendants assert that the PLRA's exhaustion requirement bars consideration of this (and other) issue(s). *E.g.*, DE ##85, at 3-4; 80, at 10-11. Given the clarity of the merits analysis, however, the Court declines to evaluate exhaustion as an alternative basis for dismissal, except as to the retaliation claim against Bunch.

28

4430190, at *9 (E.D. Mich. July 20, 2015) (Petitioner did "not establish that a jail official knew of or disregarded an excessive risk to her health or safety" when the jail "provide[d] . . . low-set steel bed frames[.]"); *Vicks v. James*, No. 7:13-CV-10 (HL), 2014 WL 2475278, at *4 (M.D. Ga. June 3, 2014). "Inmates cannot expect the amenities, conveniences and services of a good hotel[.]" *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).[23] Hollingsworth alleges no resulting physical injury from the lack of a mat or the use of steel bed frames—only that the conditions were uncomfortable. This is unavailing, as a constitutional matter, under the applicable law. The District Court should entirely deny DE #76.

---

[23] Similarly, to the extent Hollingsworth alleges liability based on the institution's failure to follow its own policies, "a defendant's failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation." *Hill v. Bussell*, No. 1:16-CV-446, 2016 WL 3135710, at *6 (W.D. Mich. June 6, 2016) (citing cases); *Martin v. Coval*, 229 F.3d 1152, 2000 WL 1234329, at *1 (6th Cir. Aug. 21, 2000) (table) ("[A] state has no federal due process obligation to follow all of its grievance procedures[.]"); *McVeigh v. Bartlett*, 52 F.3d 325, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (A "defendant's alleged failure to comply with a prison policy directive during his attempt to remove plaintiff's arm from the food slot does not rise to the level of a constitutional violation because the policy directive simply does not create a protectible liberty interest."); *Herbst v. Knight*, 86 F. App'x 963, 966 (7th Cir. 2004) ("While the prison's delay may have violated its own policies, Herbst did not show that it violated the due process clause."); *Graham v. Johnson*, 273 F.3d 392, No. 01-20070, 2001 WL 1012699, at *1 (5th Cir. July 30, 2001) (*per curiam*) (unpublished) ("In fact, we have expressly held that a prison official's mere failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process." (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996))).

*Gross Negligence*[24]

In Kentucky, to establish negligence, a plaintiff must prove "that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). "'Consequent injury' consists of what hornbooks separate into two distinct elements: actual injury or harm to the plaintiff and legal causation between the defendant's breach and the plaintiff's injury." *Id.* at 88-89.[25] "Duty, the first element, presents a question of law. Breach and injury, are questions of fact for the jury to decide. The last element, legal causation, presents a mixed question of law and fact." *Id.* at 89 (citations omitted). "The standard of care applicable to a common-law negligence action is that of ordinary care—that is, such care as a reasonably prudent person would exercise under the circumstances." *Wright*, 381 S.W.3d at 213 (internal quotation marks removed).

Gross negligence, which Hollingsworth specifically and exclusively asserts, "signifies the absence of slight care." *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238

---

[24] "[D]eliberate indifference entails something more than mere negligence[.]" *Farmer*, 114 S. Ct. at 1978. "Jailers may owe a special duty of care to those in their custody under state tort law, . . . but . . . [the Supreme Court] reject[s] the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept." *Daniels v. Williams*, 106 S. Ct. 662, 667 (1986). "The mere allegation of gross negligence . . . will avail the plaintiff nothing, of course, if the facts alleged are not sufficient to make out a constitutional violation." *Lewellen v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 349 (6th Cir. 1994). Simply put, "[g]ross negligence is not actionable under § 1983, because it is not arbitrary in the constitutional sense." *Id.* at 351 (internal quotation marks removed). The Court thus, liberally construing the claim, evaluates Plaintiff's gross negligence allegation under Kentucky law. *See Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (distinguishing between deliberate indifference under the federal constitution and gross negligence under Michigan law).

[25] Thus, in a different formulation, "[a] common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).

S.W.3d 644, 654 n.33 (Ky. 2007) (internal quotation marks removed). "Kentucky distinguishes ordinary from gross negligence, the former meaning the absence of ordinary care, . . . and the latter meaning the absence of slight care." *Donegan v. Beech Bend Raceway Park, Inc.*, 894 F.2d 205, 207 (6th Cir. 1990); *Lowe v. Commonwealth*, 181 S.W.2d 409, 412 (Ky. 1944) ("Two degrees of negligence are recognized in Kentucky: 'Ordinary negligence,' or the failure to exercise that care which ordinarily prudent persons would exercise in like or similar circumstances; and 'gross negligence,' which is the absence of slight care."); *Brotherton v. Victory Sports, Inc.*, 24 F. Supp. 3d 617, 620 (E.D. Ky. 2014); *Shearer v. Hall*, 399 S.W.2d 701, 703 (Ky. 1965) ("Gross negligence is the failure to exercise slight care.").

Hollingsworth's sole negligence theory is that Defendants "fail[ed] to intervene and force Krista Slayback, and the medical department to provide the plaintiff[] with medical treatment and the medications the plaintiff needed." DE #27, at 1; *see also* DE #86, at 2 (elaborating: "Bunch[] should have stepped in and made sure the plaintiff received the proper medical care, however she did not, making her guilty of gross negligence, with Dal[e]y, Warfi[el]d, and CCDC").

"The most important factor in determining whether a duty exists is foreseeability." *Pathways*, 113 S.W.3d at 89. "Foreseeable risks are determined in part on what the defendant knew at the time of the alleged negligence." *Id.* at 90. Thus, to be grossly negligent, any Defendant here must have failed to exercise (in Hollingsworth's chosen variant) slight care to prevent foreseeable injury to Hollingsworth. Simply put, as a general matter: "The rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987), *superseded by statute on other grounds as*

*recognized in DeStock No. 14 v. Logsdon*, 993 S.W.2d 952 (Ky. 1999).

Foundationally, Hollingsworth presents no evidence here of an injury resulting from the alleged Zoloft denial on January 6, 2015. Certainly, even assuming the existence of an injury, Hollingsworth offers nothing to show that it was foreseeable to any targeted Defendant at the time. Hollingsworth did not have a prescription for Zoloft on January 6. A person exercising slight care would not reasonably perceive a need to prevent a foreseeable injury effectuated by Slayback declining to give Plaintiff a medication that he was not currently prescribed. There is no evidence that Daley (the Jailer), Bunch (a "guard / officer"), or Warfield (a lieutenant), *see* DE #2, at 1-2, has any medical training. Therefore, Bunch, Daley, Warfield, and CCDC[26] had no duty to "step[] in" and intervene in / interfere with Plaintiff's medical care.[27] Accordingly, no Defendant was negligent.

Further, although Hollingsworth specifically and exclusively invokes the concept of gross negligence, to the extent his claim sounds in medical negligence, it obviously would fail. In a medical case, "[d]ue to the complexity of medical procedures, proof of the[] elements, almost always, must take the form of expert testimony." *Doss v. Trover*, No. 2013–CA–000909–MR, 2016 WL 102979, at *4 (Ky. Ct. App. Jan. 8, 2016); *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky. 1963) (explaining a physician's negligence must generally be established by expert medical testimony). In general, "[p]ursuant to Kentucky law, in most medical malpractice cases, a

---

[26] Neither does Hollingsworth explain, for instance, how CCDC—the institution—could itself intervene in his health care. The Court assumes his other complaints regarding Daley's and Warfield's actions to be the factual basis for the gross negligence allegation, although he nowhere factually ties those actors to negligence. The Court previously in this opinion rejected claims of impropriety against Daley and Warfield.

[27] As stated, the question here is really one of foreseeability as a duty element, which courts regularly decide on summary judgment. *See, e.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 691 (6th Cir. 2002) ("Under Kentucky law, it is clear that the existence of a duty of care to the plaintiff, and its underlying foreseeability inquiry, is a pure question of law for the court.").

plaintiff is required to put forth expert medical testimony to establish the applicable standard of care, any breach that occurred and any resulting injury to the plaintiff." *Blankenship v. Collier*, 302 S.W.3d 665, 667 (Ky. 2010). "[O]nly expert testimony can establish for the jury the applicable medical standard of care, any breach of that standard, and the resulting injury." *Doss*, 2016 WL 102979, at *4. Additionally, "causation in medical malpractice cases must be established by expert testimony." *Jackson v. Ghayoumi*, 419 S.W.3d 40, 45 (Ky. Ct. App. 2012).

"Except in limited factual circumstances . . . the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). "To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id.*

However,

Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases. . . . Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony. . . . One exception involves a situation in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters. . . . An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently.

*Id.* at 170-71 (internal quotation marks omitted).

Neither exception applies here. Rather, Hollingsworth's claims fall squarely within the recognized Kentucky scope of cases requiring expert proof. His failure to provide expert proof at

the summary judgment stage is, alternatively, fatal to his case.

The first exception is "a situation in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[.]" *Andrew*, 203 S.W.3d at 170 (internal quotation marks removed). Examples of this exception are when "the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.* Hollingsworth's situation obviously does not fit this category. This record reveals nothing that "any layman" would conclude from Slayback's treatment of Hollingsworth. The issue—concerning whether Zoloft was a proper medication for Hollingsworth—is a quintessential medical decision about which laypeople have insufficient knowledge. *Cf. Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 763-64 (Ky. 2004) ("Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative."); *id.* (recognizing, quoting sources, that only a physician may prescribe medications based on her "independent medical decision . . . that the drug is appropriate," and noting the significant exercise of "the physician's judgment in selecting the drug"). Whether to prescribe a specific medication, considering an individual's unique medical history and course of treatment, is not a matter of lay ken. *See, e.g.*, DE ##84-1 (Kline Report), at 5 (noting the varied "risks, benefits and side effects" of particular medicines); 81, at 20-21 (Depo. pp. 73-74) (Hollingsworth recognizing that doctors "put you on different types of medicine and then adjust[] it . . . [and] try[] to figure out what the right one is").

34

The second exception is "when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters[.]" *Andrew*, 203 S.W.3d at 170 (internal quotation marks removed). When "no medical testimony [i]s taken, the second exception does not apply[.]" *Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 784 (Ky. Ct. App. 2007). Indeed, an example of this exception is when "the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently." *Andrew*, 203 S.W.3d at 171. Here, Hollingsworth presents nothing of the sort. There are no medical experts to provide a foundation for *res ipsa loquitur*, and there are no admissions from involved medical providers in the record. Hollingsworth took no medical testimony. The second exception is plainly inapplicable on this record.

Because neither exception applies, application of the Kentucky cases generally requiring expert proof alternatively mandates recommending summary judgment for the defense. The Court specifically set expert disclosure and supplementation deadlines, DE #32 (Order), at 7 ("ensur[ing] the expert discovery phase of this litigation proceeds on an orderly track"), but Hollingsworth presented no expert.[28] The law is straightforward: "a plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury."

---

[28] The Court rejects any Hollingsworth effort to present Dr. Kline as an expert. *See* DE #95 (Order), at 2 n.1. To reiterate: "Dr. Kline has submitted no expert report[,] and . . . Plaintiff has not suggested that he retained Dr. Kline for the purpose of being an expert witness." *Id.* Hollingsworth did not comply with the ordered deadlines to disclose Dr. Kline as an expert. Further, Dr. Kline's contribution to the case is from November 2004 (11+ years ago), which, in the context of these claims, has exceedingly little value to the January 2015 allegations. As the Court has already noted, the report states: "The patient was on Zoloft 100 mg a day, but felt it was ineffective and it causes sexual side effects." DE #82-1, at 9. Thus, Dr. Kline indicated that Hollingsworth was then *not* prescribed Zoloft and he had previously "felt it was ineffective." A report from over 10 years before the appointment at issue stating this would in no way indicate to the prison medical staff that Plaintiff needed the drug on January 6, 2015.

*Blankenship*, 302 S.W.3d at 675. Additionally, "causation in medical malpractice cases must be established by expert testimony." *Jackson*, 419 S.W.3d at 45. To the extent Hollingsworth brings a claim in line with Kentucky's conception of a medical negligence case, because he fails to put forward required expert testimony on the elements of his claim, summary judgment is proper. *See, e.g.*, *Matthews v. Robinson*, 52 F. App'x 808, 810 (6th Cir. 2002) (applying Kentucky law and dismissing suit for lack of expert testimony).[29]

## IV.   CONCLUSION

On this record, Hollingsworth has not sufficiently supported any of his varied claims, under any of the applicable standards. Defendants are entitled to judgment as a matter of law. The Court thus **RECOMMENDS** that the District Court **GRANT** DE ##79 and 80, **DENY** DE ##76, 78, and 82, and **DISMISS** the case.

*   *   *   *   *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for *de novo* consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

---

[29] Due to the clarity of the merits assessment and in the interests of judicial economy, as to all claims Hollingsworth presents, the Court declines to engage in plenary, alternative immunity analysis (which, here, would require *extensive* analysis of issues surrounding individual/official capacities, federal/state claims, and individual/institutional defendants). Each of Plaintiff's claims substantively fails, which is the analysis on which the Court relies.

This the 19th day of July, 2016.

Signed By:

Robert E. Wier

United States Magistrate Judge